Yes, your honor. Thank you. May it please the court. My name is Kelly Vance. I'm the attorney for appellant Dolly Alvarez. I would like to reserve two minutes for rebuttal. Okay, this case is about a covered loss. It was reported in March 2018. Respondent accepted coverage made a very small payment of $678 for what it described as other physical damage slash insured property. That's an extra page 40. Ms. Alvarez did not know. Ms. Alvarez was unaware that her property had been vandalized. When her rent payment didn't come through the bank notified her and she went over there but she didn't have a key. Mr. Rich who was her tenant, kept all the keys didn't return any and she finally received a letter from him dated mid February saying that he had moved. She tried to find him. She tried to get in the house when she finally got in the house. She was horrified to find all this damage. There was holes kicked in the walls, light fixtures torn out, broken windows, torn up cabinet doors. The place was basically torn apart. He reported that. Counsel, this is Judge Rawlinson but doesn't that just point out why it's important to have insurance, different insurance when you're renting a property as opposed to as opposed to insurance when you're actually residing on the property. Well, the policy is a homeowner's policy. It was homeowner's policy, not a renter's policy. Now, Mr. Thorlakson, respondent sales agent had said that he would have renewed it or he would have converted it to a rental policy but he didn't do that and he's had two opportunities since then. Now, the policy itself has a clause that provides coverage for lost rental value. If the house becomes uninhabitable for some reason. So, this homeowner's policy does extend coverage for lost rental value. So, any our position is that any reasonable person looking at the policy would see there's coverage for lost rental value. That means you can rent all or part of the house. Well, maybe part of it. It was reported though. But counsel, isn't there a provision that the insurance policy was conditioned on her residing on the premises? No, that's not true. The the policy is an all-risk policy as we argued below. That means that all risks are covered unless there's a specific exclusion. Now, under an all-risk policy, the default position is coverage. There has to be a specific exclusion that bars coverage. But I'm asking you, was there language in the policy that referenced residency on the premises? The policy definitions define residence premises but it does not make clear that if you move out and convert it to a rental, you lose coverage and in fact, that issue came before this very court in the Howard case where the court refused to allow an insurance company to deny coverage when a house was converted to a rental and that case was cited by the Farmers versus Trutnick in the Court of Appeals of the state of Oregon with approval and the Farmers versus Trutnick case held that when an insurance company wants to deny coverage based on the definitions, it has a duty to make it clear what will cause a policy holder to lose coverage. Counsel, did you cite the Howard case in your brief? I did. I cited both the Howard case and the Trutnick case in the brief and I this came up in the context of my ambiguity argument on pages seventeen to nineteen of my response to the that policies that has a definition that seems to like limit what what's covered and has a lost rental value provision. The court must interpret the policy in a way most favorable to the insured, which means that all reasonable instances, all interpretations should be given with an eye towards giving the insurance policy benefits to the policy holder and in order to avoid forfeiture and II cited the O'Neill case and I took a quotation from the O'Neill case on page nineteen of my opposition to the summary judgment motion saying the courts must interpret these insurance policies in such a way as to avoid forfeiture. The Trutnick case held that it was directly on point, although the defense tries to distinguish the Farmers versus Trutnick case, the important takeaway from that case is that an insurance company wants to limit the coverage it's extending. It has a duty to tell the insured exactly what causes forfeiture of policy rights. There's nothing in this policy that says if you convert the premises to a rental, you lose coverage and in fact in our excerpt page seventeen is a renewal of the 18. They renewed the policy as a homeowner's policy, despite mister Thorlock and Satan, they would have they would have converted it to a rental policy. They didn't do that and this was months after mister Pritchard had walked the site and had been informed that the damage done with vandalism done by a tenant council. What do we make of the fact that country mutual sought assurances from miss Alvarez that she continued to reside on the premises. Does that matter for purposes of our analysis and and she informed them that she did reside on the property. Does that matter for our first of all there's. First of all, I don't believe that that's an accurate statement. Mrs. Alvarez her testimony was not that she spoke to them and told them she was still living there. She had no reason to do that. She had lost rental coverage. The clerk at mister Thorlock's office says that she talked to miss Alvarez, but miss Alvarez has a very heavy accent. I've sat two feet away from her and I have tried to understand what she says and sometimes it takes four times before I finally Hear the words clearly. She's got a very heavy accent. I don't believe on the telephone. The conversation was are you still living there? Oh yes, that wouldn't have been true. She took a live in position on O'Neill Road at the adult care facility. She had no reason to say I still live at my old house and she did not put in. I was mistaken about this because I misunderstood. She did not notify the post office that she's moved country says she notified we heard from the post office that she'd moved. She didn't tell the post office that she moved what she did was notify each and every person that sent her mail that she moved and she she notified mister Thorlock's and now mister Thorlock's and does not deny that he simply says I have no recollection of her contacting me in 2016 to inform me she no longer lived at the house at 5110 Newberg Drive. Well, he says he has no recollection. He's he's not denying that she notified him. What does that even what does that even matter if Howard controls? I mean the whole point. I don't think it does the whole point of Howard the way I read it is people have fluid lifestyles. so they live in their house something comes up. They decide to move. You know there's nothing in the policy that says. As of the date, the policy is issued. you have to provided you live in your house, you will still have coverage if you move out so you have this whole idea and why Howard says explicitly and ambiguously and explicitly means just say it. You know that this is not a renter's policy. If you don't live in the home and you rent it to somebody else, this policy does not provide coverage. I mean, I'm sure there are more artful ways of saying that, but that's the way I read Howard or else you get into this situation where people are fluid. They don't know well II. You know at the time that I got the coverage I live there and then I rented it to my neighbor for 2 months and then I came back and you know and to me, Howard was almost in true. The language in there was even less unambiguous than the present case, so it just you know I know those are all softballs, but I'm just you know it just seemed to me that Howard controls and this sort of a stop argument that's being made doesn't really make any difference. Well, II believe that you know this is a diversity case under the theory doctrine we're applying Oregon law and we're applying Howard because it's a nine circuit case sure, but farmers Richard Frontenac, I would argue is even more clear in favor of Miss Alvarez because it says that if you're going to rely on a policy definition, you need to make it clear as to What the rules are and it's if you're going to deny coverage a year after the fact after you've already paid on the claim and accepted coverage. Yep, you just don't get to do that. The Oregon insurance code provides that coverage has to be determined within a reasonable time. The proverbial reasonable time is 30 days. Well, she reported the claim in March. Mr. Pritchard came out on April 16th to see the damage the tenant had done the next day. They paid a check for property damage other they didn't characterize it as a water leak when they wrote that check. They sent it to Miss Alvarez by the way at her address where she had moved to so you have an acceptance of coverage and payment. There wasn't there's no distinction for paying a water leak or paying vandalism that same policy definition was in place when they paid the first check for $678, which by the way was only 1% of the amount of the line. What happened here was they underpaid the claim by a wide margin and Miss Alvarez had to hire a public adjuster to help her deal with the insurance company. It was just above her pay grade. She she couldn't understand things. Mr. Blake comes in. He does a detailed estimate. He takes photographs and videotapes and he gives them to Miss Shortell, which is responding to adjuster at the time. He invites her several times. Please come out and look at this. This is not a water leak. The holes kicked in the walls for her part. Miss Alvarez testified in a declaration that Mr. Pritchard when he came to view the damage, he didn't just look at the skylight and say, yeah, it's leaking and he took measurements in every room. He took he took photographs of the holes kicked in the wall, the broken cabinet doors, the damaged countertop, the light fixtures torn out. He took the why would he do that if it was a simple water leak? What he did was he just decided to not pay the large part of the claim and it wasn't until Mr. Blagg came on the scene and starts talking to the insurance company. He says, look, come out and look at this. You see Mr. Blagg's declaration pages 34 to 39. He detailed his frustrations in trying to get country mutual to look at this claim and see it for what it was. Counsel, this is Judge Price. Did you want to save some time for rebuttal? I Yeah, you're at 1 minute 43 seconds left for rebuttal. All right. Thank you. Okay, let's hear from country insurance. Thank you, your honor. My name is Jennifer Denning and I represent country mutual insurance company in this matter. First, I'd like to address some of the statements made by Mr. opening. First, it's not accurate that Ms. Alvarez has testified that she told country mutual she wasn't living at the property. Although that's stated in the briefing at the lower court, there isn't a declaration in the record and there never was to that point. The only evidence that's been presented about her moving out of the house and country's attempt to that country has been able to provide and that is I believe quite clear that we were concerned about whether or not she was living in the house and that we took affirmative steps to make sure that she still was when we had an indication that that wasn't the case. Second, regarding the renewals spoken about by Mr. Vance, if you look at the renewal declarations, it's pretty clear that they were provided after country had been told that Ms. Alvarez had changed her mailing address and had been mailing documents to that address but that's not reflective of anything more than that because we had been told that her mailing address had changed. Furthermore, with regard to the statements regarding the payment of the letter that we have submitted into the evidence that explains in pretty good detail exactly what country's understanding of the claim being submitted and what the payment is for and what the payment is for. So, to say that it's an ambiguous check for for other physical damage without any explanation of of what it's for or what coverage is country thinks potentially apply is just simply not correct and frankly it it's indicative of the fact that Ms. Alvarez didn't reveal to country that she wasn't living in the house until the litigation that this claim was paid at all. Did you cite Trutanich or Howard in your brief? I discussed Trutanich. I don't believe I cited Howard and I can't see a reference in at least I don't see Trutanich cited in your brief. Are you sure you cited it? I believe that I cited it in the discussion of let's see. Is this? Yeah, if you go to page nineteen of our brief, we discuss Trutanich and how it distinguished in Veritas versus Country Mutual. I do. I stand corrected but not Howard. No and and I admit that I do not believe I've read Howard. I'm not sure of its exact content. I can speak to Trutanich which I understand cites to Howard. You must be familiar with Howard though. I recall the exact content. You know that that I must admit, you know, that's kind of a bit that's that's a bit surprising because as a federal court, you know, we're bound to follow prior Ninth Circuit precedent. If any case looks like it might apply here, it's Howard. I believe that that Trutanich as mister I believe correctly stated, we do apply Oregon law here and to the extent that Howard again, Ninth Circuit law that interprets Oregon law. We follow Ninth Circuit law that interprets Oregon law and so you have Howard and you just I read your brief and I was like what what is what is going on here? Why would you just disregard addressing Howard? I'm sorry, your honor. I didn't see Howard. I can't I can't believe that you didn't think about Howard. Your honor, it was cited. It was cited in plaintiff's brief. I'm sorry, your honor. I'm afraid I don't have an answer for you as to what I was thinking when this I apologize. Well, you must have done some preparation for today's argument. So, I'm going to are you telling me that you have no familiarity with Howard? I'm telling you as I sit here today, I can't recall the facts of Howard. I reread the party's briefing. I don't have a question for you. It'll be a worthless. It will be a meaningless dialogue. Fair enough. Counsel, is the insurance company taking a position on whether or not miss gave prompt notice of the claim. Yes, it's our position that she did not particularly because she withheld meaningful facts about the loss until after her lawsuit and and as is discussed in our briefing, there's a number of relevant facts that we didn't learn until her first motion for partial summary judgment, including that not only did she not live in the house, but that didn't retain any method to access it. That was first revealed in a motion for summary judgment and although the standard for providing a proof of loss is pretty flexible under Oregon law, it does require that you provide enough information for the insurance company to meaningfully evaluate the loss and the coverage and you know because and to get to kind of the heart, what I think is the of the issue here. The grant of coverage defines what property is actually covered and that is the resident premises and unlike in the language in the country mutual policy clearly applies the residency requirement to all aspects of that grant of coverage, both the residence building or any other building and that was the distinction in that the court found the language to be ambiguous and that was the basis of the decision there as the district court found in Veritas analyzing the exact same language. There isn't an ambiguity here. It's clear that the residency requirement applies to all aspects of the resident premises and there is no dispute that Miss Alvarez did not live there. That case didn't involve an issue of whether there's coverage it involved the amount of coverage. Veritas or Truchinich? Veritas. My recollection is that it was an issue of coverage. I'm not positive so I'm going from memory, but I'll have to look it up, but in Veritas, it was the exact same policy language that we have here. It was another country mutual policy with the same clause and the court there found that the ambiguity that the Truchinich court identified favorably citing to Howard simply was not present in this policy language and it's not a condition of forfeiture. It's the grant of coverage itself. We're defining what the covered property is and as your honor Judge Rawlinson pointed out earlier. I'm just looking at Veritas. It says you know it distinguishes Truchinich and it explains that it was a coverage denial, not a liability limit. That's what it says. Then I stand corrected, your honor. So then that case is simply not applicable, is it? I would disagree. It analyzes the meaning of that phrase and the coverage to apply. It's unambiguous that the insured has to reside there, whether it's applying that lack of ambiguity to a coverage limit or to the existence of coverage at all, I think is not a distinction without a difference. The question is what does the language mean and how is it applied and I think that if it doesn't if it says that I'm distinguishing Truchinich and Truchinich is closer on point to the facts in this case because it involves the issue of coverage ab initio and the court in Veritas says it's different. Doesn't that tell you that Veritas is more than a distinction without a difference? No, I don't think so because the law of policy interpretation is the same in both cases and that's what's really important here. The question is really about what the language means. Is it It's written and that is the same in both cases and that is the key issue here and that is why we believe that that the distinction is is not a meaningful difference because the same law is is being applied to policy language and we're distinguishing not between the type of of relief thought, but what the Truchinich language says and whether it's ambiguous versus what the country mutual language in whether it's ambiguous and and that is why Veritas is on point and should control here. Veritas is a district court case. Excuse me, your honor. I'm sorry II didn't get that. Veritas is a district court case. It doesn't control. Apologies, your honor. That is why Veritas should be considered as a valid reasoning for our position here. My apologies control was was not the correct language to use. And as you know, Judge Rawlinson pointed out earlier, it is meaningful that someone lives in the house or not. If the owner lives in the house, the contemplate that an owner could rent out a portion of the house as plaintiff correctly pointed out, but it's that portion of the house. The policy clearly contemplates in all its provisions that the insured lives there and and some of them like that partial coverage for rental doesn't make a lot of sense. If you read it any other way under Oregon law, we do need to read the policy as a whole and if we look at those other provisions, it's clear that the residency requirement is a part of the entire policy. Similarly, you know renters policy is not exactly the same does not have exactly the same coverages and would treat some of these risks differently. For example, there would you know not be exclusion for types of damage to part of the home you rent out if the company knew you were renting out the whole thing that would render a lot of coverages illusory. So there are meaningful differences. It's not simply a matter of switching from one to the other without any kind of changes. That's why there's more than one policy. And with regard to the law itself, I mean we simply did not know all the facts until after suit was filed and if your honors don't have any further questions, I'll reserve the remainder of my time. You're out of time. Thank you very much. I think the other side has some rebuttal time. Yes, your honor. I do may I proceed. Yes, this this this policy Dolly Alvarez moved into this house as her primary residence. There was coverage for a couple of years or so before she moved out. One of the things about a homeowner's policy is it it also you pay for coverage for your personal property. She didn't have personal property in the rental house. She was paying for something and she was getting nothing in return for your comments about the case that it just saved me a little time. Howard governs Howard's an appellate decision. Veritas is a trial court decision. I think I believe that if it's you know, controverted by Howard Howard governs and the thing about the proof of loss proof of loss is any event as I brief below that allows an insurance company to inspect the damage and estimate the loss. Well, when mister Pritchard showed up on April 16th to do the damage that was proof of loss and in Parks versus Farmers, which I cited the proof of loss was considered to be a telephone call. So there were a number of factual arguments made by respondent below. They were all disputed. Every factual assertion made by respondents were disputed. So the trial court didn't make factual findings, but on appeal and a summary judgment, the court has to do all evidence in the light most favorable to the non-moving party. I would submit that the arguments made by respondent below were refuted. Summary judgment was inappropriate. We request that the court reverse and remand. Okay. Thank you. That can you just finished up your time right on the button. So with that, we thank both of you for your arguments and the matter is submitted at this time. Thank you. Have a good week. Everyone for this session stands adjourned.
judges: Paez, Rawlinson, Pregerson